JAVAN PARSONS, Plaintiff-Appellant, v. CARBONDALE TOWNSHIP, Defendant-Appellee.

Fifth District   No. 5—90—0556

Opinion filed August 6, 1991.—Rehearing denied September 19, 1991.

R. Courtney Hughes & Associates, of Carbondale, for appellant.

Thomas E. Jones and Leslie G. Offergeld, both of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Javon Parsons, was involved in a motor vehicle collision on Reed Station Road in Carbondale Township at approximately 1 a.m. on May 6, 1988. The motorcycle on which he was traveling, in a northerly direction, was struck by a southbound automobile driven by Curtis Taets just past the crest of a hill located on Reed Station Road. Plaintiff brought suit against defendant, Carbondale Township, to recover damages alleged to have been caused by the negligent installation and maintenance of a road-warning sign. Taets was not made a party to this lawsuit. Plaintiff appeals from the entry of summary judgment in favor of defendant by the circuit court of Jackson County on August 1, 1990.

Plaintiff raises the following issues for our consideration in this appeal:

> (1) Whether defendant owed a duty of reasonable care to plaintiff in maintaining, erecting, and placing a traffic control or warning sign, after electing to erect a warning sign near the hill;
>
> (2) Whether defendant breached the above-stated duty by failing to construct and install the sign according to the Illinois Manual of Uniform Traffic Control Devices for Streets and Highways and Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 1—100 *et seq.*) provisions; and
>
> (3) Whether the circuit court erred in finding as a matter of law that installation of the road sign by defendant was not the proximate cause of plaintiff's injuries or negligence.

For reasons stated as follows, we reverse.

Excerpts of the discovery depositions taken of plaintiff and Curtis Taets were attached to defendant's motion for summary judgment. Therefore, the following factual evidence was before the court when it ruled on defendant's motion for summary judgment. Curtis Taets, a

student at Southern Illinois University at Carbondale, had been studying for final examinations on the evening of May 5, 1988. He testified that he ingested no prescriptive or illegal drugs within 24 hours of the time of the accident. Taets invited three of his friends to take a break from their studying about 11:30 that evening and go for a ride in Taets' father's car. They had no particular destination in mind and just wanted to drive around and relax. Taets testified that he had never driven on Reed Station Road prior to that night.

Taets testified that except for stop signs in the city of Carbondale, he did not remember seeing any road signs after leaving the city limits. He was traveling on Reed Station Road, a tar and gravel road without lane markings, at approximately 55 miles per hour. The head lamps on his vehicle allowed visibility of at least 500 feet in front of the car and illuminated the road and shoulder ahead. Taets testified that although he did not see the subject road sign warning of the dangerous hill, he could see that there was a hill ahead which he was approaching. Taets did not apply the brakes as his car traveled up the hill. At approximately the crest of the hill, Taets noticed a single headlamp in the center of the road at the bottom of the other side of the hill. Taets braked his vehicle but it slid into the motorcycle driven by plaintiff.

Plaintiff testified in his deposition that he was not in the middle of the roadway as Taets had contended and that Taets had lost control of his vehicle as it crested the hill.

Plaintiff alleged in his complaint, *inter alia*, that prior to May 6, 1988, defendant, by and through its duly authorized agent Vernell Bloodworth, the Carbondale Township highway supervisor, had knowledge that a portion of Reed Station Road, approximately one mile north of Illinois Route 13, constituted a hazard to motorists and had been the scene of numerous accidents as a result of a "dangerous" hill. The complaint further alleged that the steep grade of this hill caused motorists to lose control of their vehicles when driving over the crest of this hill at speeds below the 55-mile-per-hour speed limit established for automobiles on roads outside urban districts where no other applicable speed limit has been posted. Plaintiff alleged that Bloodworth caused to be erected two traffic control signs mounted on a single pole on the north side of said hill, facing the southbound traffic on the west side of said roadway. Plaintiff further alleged that having made the initial decision to erect the traffic control signs, defendant had a duty to use reasonable care and caution in erecting said signs in such a manner as to warn the public of the "dangerous" condition so that motorists could be advised of the approaching hazard

and reduce their speed accordingly. The complaint alleged that this duty was breached because the Township:

"(a) improperly erected a regulatory speed limit sign on the same pole as the warning sign in violation of Sections 2A—21 and 2C—35 of the Illinois Manual on Uniform Traffic Control Devices for Streets and Highway[ ] (hereinafter, 'State Manual'), and in violation of Ill. Rev. Stat. 1987, ch. 95½, par. 11—304;

(b) failed to post a 'Speed Zone Ahead' sign, together with a corresponding advisory speed plate in advance of the regulatory speed limit sign used in conjunction with the warning sign, in violation of Section 7—1(a) of Chapter 7 of the Policy on Establishing and Posting Speed Limits and in violation of Ill. Rev. Stat. 1987, ch. 95½, par. 11—304;

(c) failed to construct the traffic control warning sign of reflectorized material or otherwise illuminate said sign in violation of Section 2C—2 of the State Manual and in violation of Ill. Rev. Stat. 1987, ch. 95½, par. 11—304;

(d) failed to use the properly shaped diamond traffic control warning sign in violation of Section 2C—2 of the State Manual and in violation of Ill. Rev. Stat. 1987, ch. 95½, par. 11—304;

(e) improperly mounted said traffic control sign, used in conjunction with the regulatory speed sign, too low to the ground, and too close to the edge of the roadway in violation of Section 2A—21 of the State Manual and in violation of Ill. Rev. Stat. 1987, ch. 95½, par. 11—304;

(f) failed to use the appropriate wording on said traffic control warning sign in violation of Sections 2A—14, 2C—26 and 2C—27 of the State Manual and in violation of Ill. Rev. Stat. 1987, ch. 95½, par. 11—304; [and]

(g) improperly placed said traffic control warning sign too close to the hazard, and thereby failed to give motorists sufficient advance notice so that motorists could be advised of the approaching hazard and reduce their speed accordingly."

In defendant's answer it denied each of the above-stated allegations and alleged as an affirmative defense that based on plaintiff's complaint, Carbondale Township possessed an absolute immunity for the asserted claim.

Defendant conceded at the hearing on its motion for summary judgment that municipalities which undertake to erect road signs must do so nonnegligently. However, defendant contended that in order for Carbondale Township to be liable, plaintiff must show that the

erection of that particular sign created an unreasonably dangerous condition or misled the public. Defendant further contended that even if it could be considered negligent for the erection of this sign because it should have put up a different type of sign, its action could not have been the proximate cause of plaintiff's accident because Taets testified that he did not see the sign and therefore could not have been misled thereby. Defendant further argued that Taets was obliged in any event under Illinois law to reduce his speed as he approached a hill but elected to proceed at a speed of 55 miles per hour.

Plaintiff argued in response to the motion for summary judgment that defendant had a duty, after electing to install the warning sign, to install that sign in a nonnegligent manner. Plaintiff contended that as the sign which was installed did not conform to State regulations concerning reflectorization, size, location, message on the sign, and proximity to the hazard, defendant breached that duty. Plaintiff argued that although Taets had testified that he did not see the particular sign which was placed there, he did not make a statement that had the sign been properly installed and reflectorized, he would not have seen it and had, in fact, affirmatively testified in his deposition that had he seen the sign which was there, he would have slowed down. Plaintiff concluded that there were significant issues of fact for the jury to determine and so summary judgment was inappropriate.

The court found, however, that there was no indication from the depositions that had Taets seen the sign he would have acted differently because, as he stated, he was aware of the approaching hill. The court concluded that plaintiff's argument, that the fact that Taets did not see the sign erected did not mean that he would not have seen a properly constructed sign, was pure speculation. The court acknowledged that it had previously found in its order denying defendant's motion to dismiss that defendant owed a duty to install the warning sign in a nonnegligent manner. However, the court determined that neither causation nor negligence could be found on defendant's part where it did not create the hazardous condition which was the immediate proximate cause of the injuries sustained by plaintiff. Accordingly, the circuit court found that defendant was entitled to judgment as a matter of law.

Summary judgment shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) A motion for summary judgment is properly granted where no triable issue of fact exists. (*Waite*

*v. Chicago Transit Authority* (1987), 157 Ill. App. 3d 616, 619, 510 N.E.2d 1176, 1179.) Although defendant is not required to disprove plaintiff's case, it may meet its burden in moving for summary judgment by establishing the absence of a genuine issue of material fact. (*Waite*, 157 Ill. App. 3d at 619, 510 N.E.2d at 1178.) In such case, if what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered. *Waite*, 157 Ill. App. 3d at 619, 510 N.E.2d at 1178, citing *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500.

■ In a cause of action alleging negligence, the plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from the breach of that duty. (*Wojdyla v. City of Park Ridge* (1991), 209 Ill. App. 3d 290, 293, 568 N.E.2d 144, 145.) Motions for summary judgment properly address issues of duty. (*Wojdyla*, 209 Ill. App. 3d at 293, 568 N.E.2d at 145.) The relevant duty of municipalities is set forth in section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act):

> "(a) Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).)

Section 3—102 of the Tort Immunity Act codifies the common law duty of a local public entity to maintain its property. (*Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 203, 565 N.E.2d 695, 701.) This includes the duty to maintain public highways within its boundaries in a reasonably safe condition. (*Smith v. County of White* (1989), 191 Ill. App. 3d 569, 575, 548 N.E.2d 19, 23.) The Act creates no new duties but simply articulates the common law duty to which the other immunities, subsequently delineated in the sections of

the Act following section 3—102, apply. *Greeson*, 207 Ill. App. 3d at 203, 565 N.E.2d at 701.

■■ One of the delineated immunities is that neither a public entity nor a public employee is liable under this Act "for an injury caused by the failure to initially provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Ill. Rev. Stat. 1989, ch. 85, par. 3—104.) Moreover, a local public entity is not liable under sections 3—101 to 3—310 "for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved." (Ill. Rev. Stat. 1989, ch. 85, par. 3—103(a).) However, this section further provides that the local public entity is liable "if after the execution of such plan or design it appears from its use that it has created a condition that it [*sic*] is not reasonably safe." Ill. Rev. Stat. 1989, ch. 85, par. 3—103(a).

Further, under common law a municipal corporation acts judicially or exercises discretion when it selects and adopts a plan in the making of public improvements such as constructing sewers or drains; but as soon as it begins to carry out that plan, it acts ministerially and is bound to see that the work is done in a reasonably safe and skillful manner. (*Greeson*, 207 Ill. App. 3d at 201-02, 565 N.E.2d at 701, citing *City of Chicago v. Seben* (1897), 165 Ill. 371, 378, 46 N.E. 244, 246.) Discretionary acts are those which are unique to the particular public office and not merely ministerial in nature, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act. (*Greeson*, 207 Ill. App. 3d at 201, 565 N.E.2d at 700, citing *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 448 N.E.2d 249.) We have recently held that the act of maintaining existing highways is ministerial in nature and accordingly municipalities would not enjoy immunity from suit for the negligent performance of that act. *Long v. Friesland* (1988), 178 Ill. App. 3d 42, 52, 532 N.E.2d 914, 920.

■■ ■ Plaintiff's complaint does not challenge the township highway supervisor's failure to post a warning sign but alleges that the sign which was posted near the dangerous hill was installed in viola-

tion of the Illinois Manual on Uniform Traffic Control Devices for Streets and Highways (State Manual) and the Illinois Vehicle Code. Those violations allegedly included erecting the warning sign and speed limit sign on the same pole, failing to construct the sign of reflectorized material, mounting the sign too low to the ground, failing to use appropriate wording or use a properly shaped diamond traffic control warning sign, failing to post a "speed zone ahead" in conjunction with the warning sign, and placing the warning sign too close to the hazard. Section 11—304 of the Illinois Vehicle Code provides:

> "Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter and local traffic ordinances or to regulate, warn, or guide traffic. All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual. Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the County Superintendent of Highways." (Ill. Rev. Stat. 1989, ch. 95½, par. 11—304.)

We find that installation of traffic control devices is an integral part of the municipality's common law duty to maintain its public highways in a reasonably safe condition. The construction and placement of such road signs are statutorily controlled by specifications stated in the State Manual. Accordingly, the alleged failure on the part of the Carbondale Township highway supervisor to comply with the requirements of the State Manual as required by section 11—304 of the Illinois Vehicle Code could subject defendant to liability for negligent performance of a ministerial duty. (See *Greeson*, 207 Ill. App. 3d at 202, 565 N.E.2d at 701.) We therefore hold that, having undertaken to install the road sign by the dangerous hill, defendant's duty of reasonable care included installation of a sign which conformed to the specifications set forth in the State Manual and such placement and maintenance of the sign as is required to regulate, warn, or guide traffic. Moreover, defendant's answer denying the alleged violations of the State Manual specifications created issues of fact as to whether the aforesaid duty was breached; accordingly, summary judgment was not proper on either the issue of the existence of a duty or the issue of the breach thereof.

Defendant argues and plaintiff agrees, however, that the true basis for summary judgment in its favor was the circuit court's finding

that there was no proximate cause. While proximate cause is ordinarily a question of fact for the jury, the court can decide it as a question of law where reasonable minds could not differ as to inferences to be drawn from undisputed facts. (*Newsome v. Thompson* (1990), 202 Ill. App. 3d 1074, 1081, 560 N.E.2d 974, 979.) We note that plaintiff admits that there are no indisputable facts with regard to the proximate cause issue. Therefore, if the circuit court correctly ruled as a matter of law that installation of the road sign could not have been the proximate cause of plaintiff's injuries, summary judgment in defendant's favor was proper.

The court determined that there could be no causation or negligence where the installation of the road sign did not create the hazardous condition which was the immediate proximate cause of plaintiff's injuries. As noted earlier, section 3—103(a) of the Tort Immunity Act delineates an exception to a municipality's immunity from tort liability for an injury caused by the adoption of a plan or design of a construction of, or an improvement to, public property where the use of such plan or design has created an unreasonably unsafe condition. Again, this provision is consistent with the common law, which holds that where the municipality by implementation of a plan for public improvement creates a hazardous condition and someone is injured as a consequence, it must respond in damages. (*Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, 181, 251 N.E.2d 227, 229.) In *Baran* the plaintiff had alleged that the glare created by the improper location of street lighting and plaintiff's automobile headlamps caused plaintiff to drive past a dead end street and into a tree. The court stated that where a city undertakes to provide lights, it is liable for injuries which result from deficient or inadequate ones. The rationale behind the court's decision in *Baran* is that while the court will not review an allegedly negligent exercise of a discretionary governmental function such as a plan for the location of the street lighting, the court will review the plan once put into operation where it leaves the city's streets in a dangerous condition for public use. *Baran*, 43 Ill. 2d at 180-81, 251 N.E.2d at 227.

However, common law also recognizes that where it was not the municipality which created the hazardous condition but the danger was created by the actions of others on its property, which the municipality had taken repeated steps to try to curtail, the municipality is not liable for negligence. (See *Harding v. Chicago Park District* (1975), 34 Ill. App. 3d 425, 430, 339 N.E.2d 779, 783.) In *Harding*, defendant maintained and controlled a strip of roadway which was repeatedly used for "drag racing." The evidence indicated that defend-

ant knew of this problem and took steps on five different occasions to curtail the drag racing, including installing barricades and barriers some of which vandals later removed. Plaintiff's decedent was killed when he was struck by a drag racer, but in plaintiff's wrongful death action against the park district, the court found that the hazardous condition was caused by the actions of others on the roadway it controlled. *Harding*, 34 Ill. App. 3d at 430, 339 N.E.2d at 783.

As noted by the court in *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 522 N.E.2d 215, the distinction between the two lines of cases is that only where the action of the defendant created a hazardous condition to the roadway itself, endangering normal traffic or foreseeable deviations therefrom, will the defendant municipality be liable. (*Ross*, 168 Ill. App. 3d at 89, 522 N.E.2d at 219.) We agree with the court below that this distinction, whether or not defendant's actions created the hazardous condition, is also dispositive of the proximate cause issue. To establish proximate cause, the plaintiff must demonstrate with reasonable certainty that a defendant's alleged acts or omissions caused the injury for which plaintiff seeks recovery. *Waite v. Chicago Transit Authority* (1987), 157 Ill. App. 3d 616, 619, 510 N.E.2d 1176, 1178.

Proximate cause is defined as that cause which produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. (*Durbin v. St. Louis Slag Products Co.* (1990), 206 Ill. App. 3d 340, 356-57, 564 N.E.2d 242, 253.) Defendant's negligence will not constitute a proximate cause of plaintiff's injuries if some intervening act supersedes the defendant's negligence, but if the defendant could reasonably foresee the intervening act, that act will not relieve the defendant of liability. (*Bentley v. Saunemin Township* (1980), 83 Ill. 2d 10, 15, 413 N.E.2d 1242, 1245.) This is so because, as Prosser notes, "[f]oreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence." (Prosser, Torts §44, at 273 (4th ed. 1971).) To escape liability, a defendant must demonstrate that the intervening event was unforeseeable as a matter of law. *Durbin*, 206 Ill. App. 3d at 357, 564 N.E.2d at 253.

■■ We must conclude that installation of a road sign intended to warn motorists of a dangerous hill and to reduce their speed to avoid a possible accident caused by driving too fast for conditions, which by its nonconforming construction makes it unlikely that it would be seen by motorists at night, creates a hazardous highway condition. We must also take judicial notice that the specifications set forth in the State Manual were devised in order to effectively regulate, warn, and

guide traffic in this State and that these regulations are to be applicable and uniform throughout the State of Illinois. (See Ill. Rev. Stat. 1989, ch. 95½, pars. 11—207, 11—304.) We further find that it is reasonably foreseeable that a motorist driving at night could have failed to see the nonconforming warning sign and thus fail to reduce his speed and lose control of his car. We note the allegation of plaintiff's complaint that this portion of the township highway was the scene of numerous accidents.

Defendant agrees that a violation of a statute designed to protect human life or property is *prima facie* evidence of negligence; however, it maintains that the presence of the road sign allegedly in violation of section 11—304 of the Illinois Vehicle Code and the State Manual had nothing to do with the cause of the accident since there was no evidence that Taets saw the sign. Defendant argues that the allegedly negligently erected sign did not cause Taets to act any differently than he would have if the sign had not been there at all. We believe defendant misses the point. The installation of a warning sign which does not conform with specifications set forth in the State Manual effectively rendered the sign less visible at night thus creating a hazardous condition on the highway. We also disagree with defendant and the court below that it was speculative whether Taets would have seen a properly constructed reflectorized sign at a point in relation to the hill to allow for braking of his vehicle.

The determination of comparative negligence under *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, requires consideration not only of plaintiff's and defendant's fault, but that of nonparty tortfeasors as well. (*Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1060, 466 N.E.2d 1064, 1069; see also Illinois Pattern Jury Instructions, Civil, No. 45.05 Comment (3d ed. 1991).) Therefore the failure of Taets to reduce his speed when he approached the hill will properly be considered by the jury in assessing comparative negligence and apportioning blame for plaintiff's injuries. However, there may be more than one proximate cause of an injury. (*Bentley*, 83 Ill. 2d at 17, 413 N.E.2d at 1246.) We cannot say that the actions of Curtis Taets were the sole proximate cause of this accident, and we therefore hold that the court below erred in finding as a matter of law that defendant's action or omission was not the proximate cause of plaintiff's injury.

■ The summary judgment order in the instant case was also based on a finding as a matter of law that there was no negligence. Summary judgment is a remedy to be awarded with caution so as not to preempt any litigant from presenting the full factual basis for his cause of action. (*West v. Kirkham* (1990), 201 Ill. App. 3d 1051, 1054,

560 N.E.2d 632, 634.) However, where a plaintiff fails to establish an element of the cause of action through the pleadings, depositions, admissions, and affidavits filed, summary judgment for defendant is proper. (*Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 641, 428 N.E.2d 662, 664.) We have previously found that installation of traffic control devices in a reasonably safe manner is part of a municipality's duty to maintain its public highways in reasonably safe condition and that failure of such device installed by the municipality to comply with specifications stated in the State Manual could result in a breach of that duty. Further, there is no contention before this court, nor was there before the trial court, that plaintiff was not injured in this accident; defendant argued instead that the construction and installation of this traffic control sign could not have been the proximate cause of plaintiff's injuries. However, we have also found that the risk of a driver being unable to brake his vehicle to avoid an accident on the dangerous hill because of his inability to see the nonconforming warning sign at night would be one of the foreseeable consequences of constructing and installing a traffic warning sign which did not meet State Manual specifications and could have been one of the proximate causes of plaintiff's injury. Therefore, we hold that the court below erred in finding as a matter of law that there was no negligence on defendant's part and so defendant was entitled to judgment as a matter of law, because plaintiff has pled sufficient facts to establish a cause of action in negligence. Because the record indicates that the facts pled are in dispute, summary judgment is additionally improper in that issues of material fact remain to be determined.

Accordingly, the August 1, 1990, summary judgment order of the circuit court of Jackson County is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

RARICK, P.J., and CHAPMAN, J., concur.